### THE FLORIDA.

### THE CHELSEA.

#### (Circuit Court of Appeals, Second Circuit. January 15, 1919.)

#### Nos. 149, 150.

COLLISION ⬥⇒153—REVIEW—FINDINGS—CONFLICTING EVIDENCE.

    Finding that the C. was at fault in a collision with the F. will be adopted on appeal; the testimony from the contending vessels being hopelessly conflicting, apparently disinterested evidence favoring the F., and the wrongdoing under explanation given by the C. being far more complicated and unusual than under the explanation of the F.

Appeal from the District Court of the United States for the Southern District of New York.

Two libels in admiralty, one by the Norwich & New York Propeller Company against the ferryboat Florida, her engines, etc., claimed by the Interborough-Twenty-Third Street Ferry Company; the other by the Interborough-Twenty-Third Street Ferry Company, Incorporated, against the steamer Chelsea, her engines, etc., claimed by the Norwich & New York Propeller Company. From adverse decrees, the Norwich & New York Propeller Company appeals. Affirmed.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellant.

James T. Kilbreth, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

PER CURIAM. No questions of law are raised by this appeal, and the correctness of the finding below depends on one question of fact.

Suit grew out of a collision in daylight and under no extraordinary conditions of tide and wind, between the side wheel ferryboat Florida and the propeller Chelsea; the former bound across the East River from Manhattan to Brooklyn, and the latter from her pier in Manhattan to New London, Conn. As the Florida left her slip, she had, of course, on her starboard bow much of the usual east-bound traffic of the river, but especially the tug Gillen and her tow, the Chelsea, and the propeller Bunker Hill, in the order given, with the Gillen nearest the Manhattan shore.

Of these vessels all of whom had the right of way over the Florida, the Bunker Hill was nearest Brooklyn and proceeding much faster than the others, while the Gillen was slowest of all, and before any suggestion of danger was plainly changing course to go over to Brooklyn. The Chelsea was rapidly overhauling the Gillen.

In this situation, the Bunker Hill, after an exchange of single whistles, crossed the Florida's bow, while the Florida crossed that of the Gillen. At or about this moment, and when by all the evidence there was room to make the maneuver safely "the Florida (to quote from Chelsea's libel) gave a signal of two whistles, which were promptly answered by the Chelsea with two whistles, and the Chelsea's wheel

was put to starboard. When the Florida was about a quarter of a mile away from the Chelsea and still upon her port bow, the Florida, instead of proceeding under a starboard wheel across the bow of the Chelsea, as agreed upon by the signals, swung to starboard and showed her port side to those in charge of the navigation of the Chelsea." A moment later, as is charged, the Florida swung back to her own port hand, and collision followed between the Chelsea's starboard bow and the Florida's starboard side.

The question of fact is whether this statement is true, or whether, as charged by the Florida, Chelsea, after agreeing to permit Florida to pass her bow, continued on at too great speed and ran into the ferryboat as the latter was in the act of doing exactly what the Chelsea had agreed to.

The testimony on this point from the contending vessels is hopelessly conflicting, the apparently distinterested evidence from the Gillen favors the Florida, collision could not have happened without very culpable navigation by some one, the explanation given by Chelsea asserts far more complicated and unusual wrongdoing than that of the Florida, and the trial judge, having seen and heard all the witnesses, believed the ferryboat's story. Under such circumstances we should adopt the finding below.

Decree affirmed, with interest, and one bill of costs.